**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MORGAN PEDEN,

Plaintiff, Case No.

v. Hon.

AFFORDABLE CARE, L.L.C.,

Defendant.

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 940-5848-fax
sbatey@bateylaw.com

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, Morgan Peden, by and through her attorney's Scott P. Batey and the Batey Law Firm, PLLC, and for her Amended Complaint against Defendant states as follows:

1. That Plaintiff is a resident of and domiciled in the State of Oklahoma.

2. Defendant, Affordable Care, L.L.C. is a foreign limited liability company domiciled in North Carolina, whose resident agent is National Registered Agents, Inc. and registered mailing address is 40600 Ann Arbor, Rd., E, Suite 201,

Plymouth, Michigan 48170 and who is duly authorized to conduct business in the southeastern district of Michigan.

3. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

4. Jurisdiction and venue are proper in the District Court for the Eastern District of Michigan pursuant to 28 USC §1332 and 28 USC §1391.

5. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

6. Plaintiff brings this action for damages stemming from the acts and/or omissions of Defendant constituting violations of sexual harassment under the ELCRA, and retaliation which resulted in economic damages to the Plaintiff.

**GENERAL ALLEGATIONS**

7. Plaintiff incorporates by reference paragraphs 1 through 7 of the Complaint as though fully set forth herein.

8. Plaintiff, Morgan Peden was employed with Defendant where she worked as a Dental Laboratory Technician.

9. Plaintiff would travel around the country working for Defendant.

10. Plaintiff's immediate supervisor was Ashford Worthington who would send her around the country.

11. Worthington would frequently call Plaintiff while she was travelling which

began to discuss business.

12. After the third phone call Worthington began to sexually harass Plaintiff.

13. He would tell her she was doing an incredible job and he would fly into town to "wine and dine" Plaintiff.

14. Plaintiff, aware that Worthington was married with children told him it was inappropriate for her to go to dinner with her boss, and she did not think his wife would approve of their going to dinner.

15. Worthington responded that he never has taken a women out that works under him out to dinner but they have all tried and some had even sent him photos of their breasts.

16. He told Plaintiff that he had all of the photos saved on his phone in a file called "tits from affordable dentures" and that now he just needs one of Plaintiff's.

17. When Plaintiff let him know his comments were unwelcome, he said he was kidding.

18. Plaintiff then made it perfectly clear that she was uncomfortable, that his comments were unwelcome and that she would never send him an inappropriate photo.

19. Plaintiff met Worthington is Charlottesville, Virginia.

20. Worthington asked Plaintiff to go to lunch to discuss business and they went to a restaurant near the clinic and talked about how to better help the clinic.

21. Worthington would began to talk about things off the topic of work which

made Plaintiff uncomfortable.

22. He told Plaintiff he thought she was an incredible person and promised Plaintiff his position and a promotion because he cared about her.

23. He asked her what she wanted from him and she told him she just wanted to do her job and travel.

24. Plaintiff continued to keep the conversation strictly business.

25. Worthington also visited Plaintiff at a clinic in Minnesota where he told he typically did not visit the clinics and only went there to see Plaintiff.

26. He later asked Plaintiff over the phone if he could kiss her when he saw her next and she said absolutely not.

27. He asked Plaintiff if she would stay with him in his hotel and let him eat her pussy.

28. Worthington's comments made Plaintiff so uncomfortable she confronted him and told him it was inappropriate and made her uncomfortable.

29. Worthington again replied he was just kidding which became his canned response when he made Plaintiff uncomfortable.

30. In August 2024 Worthington flew into Michigan where Plaintiff was working.

31. That evening Plaintiff was alone in her hotel room when Worthington sent her a picture of his penis and a video of him masterbating.

32. Plaintiff tried to ignore him because he promised to promote.

33. While in Michigan Worthington wanted Plaintiff to stay late alone with him in the clinic to work on cases but Plaintiff told him that Plaintiff had to pick up her boyfriend at the airport.

34. After being told Plaintiff had a boyfriend, Worthing told her "you broke my heart."

35. Plaintiff was again offended because she told him in no uncertain terms that she was not interested and his comments and continued pursuit of her for a sexual relationship was offensive and "not gonna happen."

36. After learning Plaintiff had a boyfriend Worthington went from pursuing her sexually to hostile and aggressive toward Plaintiff.

37. Worthington then booked a flight home for Plaintiff, without her asking, and told her to go home and relax a few days.

38. Worthington then refused to return Plaintiff to work.

39. Plaintiff complained to HR that Worthington was using his role as her supervisor to sexually harass her and when she refused to engage in a sexual relationship with him he terminated her.

40. Armed with this knowledge that Worthington was levering his job as Plaintiff's supervisor to have a sexual relationship with her and sending her pictures of his penis and a video of himself masterbating Defendant did nothing and Plaintiff was

terminated.

41. Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2025. Charge Number 471-2025-05786.

42. Plaintiff is still waiting for the EEOC to issue a Right to Sue Letter and will amend her Complaint at that time to include claims under Title VII.

**COUNT I**
**SEXUAL HARASSMENT**

43. Plaintiff incorporates by reference paragraphs 1 through 42 of the Complaint as though fully set forth herein.

44. Plaintiff belongs to a protected class as a female.

45. Plaintiff was subjected to communications and conduct on the basis of sex when Plaintiff was asked out on dates continuously even after indicating she was not interested.

46. The unwelcome romantic and sexual conduct and communication was intended to and did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and offensive work environment due to sex.

47. Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA § 37.2101, et seq., and Title VII, Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment and/or hostile work environment at work based upon sex or Plaintiff's gender/sex.

48. Defendant knew Plaintiff was being sexually harassed and subjected to

a hostile and offensive work environment, but did nothing about it.

49. At all material times, Defendant was Plaintiff's employer, and Plaintiff was Defendant's employee, within the meaning of Michigan Elliott-Larsen Civil Rights Act, MCLA § 37.2101, *et seq.* and Title VII.

50. Plaintiff was subjected to repeat and continuous discriminatory treatment based upon her gender and/or sex by Defendant through its agents, employees and/or representatives to the point where her status as an employee has been detrimentally affected and her ability to function within her job has been hindered.

51. The conduct experienced by Plaintiff was severe and pervasive and Defendant refused to take prompt remedial measures.

52. Defendants' actions were intentional and in disregard for Plaintiff's rights and sensibilities.

53. As a direct and proximate result of the unlawful actions of the Defendant and their employees, agents and/or representatives, Plaintiff was the subject of discriminatory conduct on the part of Defendants.

54. At all times relevant, Plaintiff was able to perform her job and did so when she was not being sexually harassed.

55. As a result of the sexual harassment and discrimination Plaintiff was subjected to adverse employment actions including being constructively discharged.

56. As a proximate result of the discriminatory conduct by Schenck Defendants' failure to take remedial action against the intimidation, harassment and discriminatory conduct, Plaintiff has sustained injuries including, but not limited to:

a. Lost wages;

b. Mental anguish;

c. Fright and shock;

d. Outrage;

e. Anxiety;

f. Depression;

g. Emotional distress;

h. Loss of self-esteem;

i. Loss of earnings and other employment benefits; and

j. Loss of capacity for the enjoyment of life.

57. Defendant engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

**COUNT II**
**SEXUAL DISCRIMINMTION**

58. Plaintiff incorporates by reference paragraphs 1 through 57 of the Complaint as though fully set forth herein.

59. Plaintiff was subjected to communications and conduct on the basis of sex when Plaintiff was asked out on dates continuously and to engage in oral sex and send him pictures of her breasts even after indicating she was not interested.

60. Plaintiff belongs to a protected class as a female.

61. Plaintiff was subjected to an adverse employment action when she was terminated.

62. Plaintiff was qualified to do the job as a Dental Laboratory Technician and at all times performed the duties of the job as an exemplary employee.

63. Plaintiff was terminated for her refusal to engage in a romantic relationship at work with Worthington.

64. Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA § 37.2101, et seq., and Title VII, Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment and/or hostile work environment at work based upon sex or Plaintiff's gender/sex.

65. At all material times, Defendant was Plaintiff's employer, and Plaintiff was Defendant's employee, within the meaning of Michigan Elliott-Larsen Civil Rights Act, MCLA § 37.2101, *et seq.*

66. Plaintiff was subjected to repeat and continuous discriminatory treatment

based upon her gender and/or sex by Defendant through its agents, employees and/or representatives to the point where her status as an employee has been detrimentally affected and her ability to function within her job has been hindered.

67. The conduct experienced by Plaintiff was severe and pervasive and Defendant refused to take prompt remedial measures.

68. Defendants' actions were intentional and in disregard for Plaintiff's rights and sensibilities.

69. As a direct and proximate result of the unlawful actions of the Defendant and their employees, agents and/or representatives, Plaintiff was the subject of discriminatory conduct on the part of Defendants.

70. At all times relevant, Plaintiff was able to perform her job and did so when she was not being sexually harassed.

71. As a result of the sexual harassment and discrimination Plaintiff was subjected to adverse employment actions including being constructively discharged.

72. As a proximate result of the discriminatory conduct and Defendant's failure to take remedial action against the intimidation, harassment and discriminatory conduct, Plaintiff has sustained injuries including, but not limited to:

a. Lost wages;

b. Mental anguish;

c. Fright and shock;

d. Outrage;

e. Anxiety;

f. Depression;

g. Emotional distress;

h. Loss of self-esteem;

i. Loss of earnings and other employment benefits; and

j. Loss of capacity for the enjoyment of life.

73. Plaintiff is entitled to punitive damages as Defendant engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

**COUNT III**
**RETALIATION**

74. Plaintiff incorporates by reference paragraphs 1 through 73 of the Complaint as though fully set forth herein.

75. Pursuant to and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, et seq., Plaintiff is guaranteed the right to be free from discrimination from their employer and/or supervisors based upon her sex.

76. Plaintiff's sex was a factor in Defendant's employment decisions.

77. Defendant, was Plaintiff's employer within the meaning of the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq.*

78. During the course of her employment with Defendant, Plaintiff was subjected to constant unwelcome sex harassment and discrimination creating a hostile work environment by Defendants.

79. The sex harassment and discrimination created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

80. Plaintiff complained to Defendant, that she was being sexually harassed and discriminated against being subjected to a hostile work environment.

81. Defendants had actual and constructive notice that it was creating an intimidating, hostile and offensive work environment for Plaintiff.

82. Despite having notice of the racial discrimination and conduct toward Plaintiff, Defendant failed to take any remedial action, but instead took adverse employment action against Plaintiff based upon her sex and in retaliation for her complaints of sexual harassment and discrimination.

83. The sexual harassment and discrimination and conduct by Defendant and Defendant's failure to take any remedial action violate the Michigan Elliott- Larsen Civil Rights Act, MCL 37.2101 *et seq.*

84. As a proximate result of the Defendants' retaliation against Plaintiff, Plaintiff have sustained injuries including, but not limited to, physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: December 5, 2025

**DEMAND FOR JURY TRIAL**

NOW COMES, Plaintiff, Morgan Peden, by and through her attorney's, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/ Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: December 5, 2025